Good morning, Your Honors, and may it please the Court. Kathleen Sullivan for Appellant Bio-Rad. The issue in this case is whether you can sustain an $11 million judgment for supposed employment retaliation for the reporting of supposed Foreign Corrupt Practices Act violations in China. But the FCPA does not have a retaliation provision, and there is no federal common law of retaliation. Rather, there are specific federal statutory bases for retaliation. And so Mr. Wadler here had to construct a retaliation theory by referring to three other sources of law outside the FCPA, Dodd-Frank, Sarbanes-Oxley, and California Public Policy under the Tammany line of cases. And I'd like to address each of those in turn, because none of those three bases can support the judgment here. Well, Dodd-Frank, I think we're all pretty clear that law has changed as to that. Excellent, Your Honor. So that takes $2.96 million off the table because that was attributable solely to the doubling provision of Dodd-Frank. And, of course, Digital Realty v. Summers made clear that you have to internal reporting is not enough. You have to report to the SEC. Mr. Wadler didn't. So at a minimum, we respectfully request the Court reverse the $2.96 million that's attributable solely to Dodd-Frank. That takes us to Sarbanes-Oxley. And here, for ease of reference, I'd like us to refer the Court to the language of the Sarbanes-Oxley retaliation provision. And for ease of reference, it's reprinted in the blue brief at the top of page 18. Sarbanes-Oxley's retaliation provision, 18 U.S.C. 1514a sub a1, gives you three possible hooks for a SOX retaliation claim. The first one, line 3 on page 18, would be that the retaliated-against-employee reports a violation of any of four enumerated statutes, the mail fraud, wire fraud, bank fraud, or securities fraud statutes. That is not in this case. It is undisputed that Mr. Wadler did not report anything under those statutes. So basis 1 is out of the case. That leads us to basis 2, reprinted in line 4 at the top of page 18, retaliation for reporting a violation of, quote, any rule or regulation of the Securities and Exchange Commission. That is what this case was litigated on. That, ground 2. And let me show, Your Honors, why that is so, that that claim 2. Before you do that, this is all hooked into Instruction No. 21, correct? Exactly, Your Honor. Looking at Instruction 21, there is essentially a an introductory phrase that says under the rules and regulations of the SEC, some things are unlawful. Do you agree without regard to that introductory phrase that those four things are, in fact, unlawful, bribing, failing to keep books and records, falsifying books and records, knowingly circumventing internal accounting controls? I'm summarizing them. Do you agree that those are unlawful? Yes, under the FCPA, those are unlawful. Okay. So what is what function does that initial hiccup even have here? If the jury is properly told that these things are unlawful and that he was reporting unlawful things, what difference does it make to the outcome whether they think it's because of the SEC or they think it's because of a statute relating to fraud on shareholders? Oh. So, Your Honor, it makes all the difference. Why? Because the hook has to be to a rule or regulation of the SEC. No, but under the statute, it can also be any provision of Federal law relating to fraud against shareholders. Correct, Your Honor. It could have been, but that was not charged in this case. That was never litigated or charged in this case. So let's let's say charge. This is not a criminal case. The instruction of the jury was exactly, Your Honor. If I could go back and say this case stands or falls on the rule or regulation of the SEC provision and not on the other provision of Federal law relating to fraud against shareholders, and here's why, Your Honor. The fraud against shareholders prong of SOX, of the SOX retaliation law, was completely waived. It was waived. It was never, ever raised below. Instead, Mr. Wadler predicated his entire retaliation case on Clause 2, the rule or regulation clause, and not on Clause 3, the provision of Federal law relating to fraud against shareholders. And this is important, Your Honor. And I want to refer, Your Honor's to your argument, your claim, as I understand it, is that you're entitled to reversal of this jury verdict because the jury instruction was incorrect. Is that correct, Your Honor? Okay. Our standard of review requires us to do two things. The first is to determine whether the instruction is erroneous. And, indeed, these are not SEC rules, so it's erroneous. But the second step is for us to determine whether there was an injurious effect on the verdict. And that's where I have difficulty seeing, if all these things are, in fact, illegal, and this is what the jury found, was complained about and retaliated against, I don't understand how the instruction made any difference to the outcome. Your Honor, the instruction was erroneous. I'm glad we agree on that. Well, I'm just, you know, I'm speaking only for myself as I'm working through this problem, but. Your Honor, just let's take it in the two steps, your two steps. All right. Let's just assume it's erroneous. But we have our standard of review does not permit us, does not permit us to reverse on an erroneous jury instruction unless it affected the verdict. Your Honor, it absolutely affected the verdict because the jury was never told, and therefore it was never litigated in this case, that there was an alternative route to the same result. But what difference does that make? They were told the things that are illegal substantively. Because, Your Honor And they were told that they had to find whether he complained about those illegal things and whether he was retaliated against for doing so. Those were the elements, and the elements are properly stated. So I Your Honor, they're properly stated under the FCPA. But let's look at the language of SOX. The instruction is erroneous under SOX. SOX is what we must look at. And SOX refers to a provision of Federal law relating to fraud against shareholders. Now, I must respectfully disagree with Your Honor's suggestion that the FCPA is a provision of Federal law relating to fraud against shareholders. Fraud against shareholders Counsel, assume for the minute that I agree with you on that account, where don't you agree that terminating someone for violating any provision of the FCPA is a California public policy violation? Your Honor, it might be in a different case. But again, I want to go back to the instructions in this case, which create the universe. In this case, didn't you submit your own instruction saying just what I said, your which you said stated the law as it currently exists, where you ask the judge to instruct the jury that discharging Mr. Wadler for violating, for reporting the FCPA violated California public policy? Your Honor, the California public policy, again, I want to remind you of the two central appellate procedure constraints here. One, Mr. Wadler can't get the judgment affirmed on a ground he waived below. And number two, you can't affirm the judgment based on an alternative theory that wasn't in the jury instructions. And so, Your Honor, we do concede that in some cases you might raise a Tammany violation based purely on bribery. But this is not that case. And here's why, Your Honor. I respectfully refer you to Instruction 27, which is the Tammany instruction as given. You can see it reprinted at the bottom of Blue Brief. It's on 29-note-3. And Instruction 27 as given said, it is a violation of public policy under Tammany to discharge an employee for engaging in protected activity under SOX.  for engaging in protected activity under SOX. Isn't that simply a shorthand for the four things that are listed in Instruction 21? No, Your Honor, because the four things that are listed in Instruction 21 are not SOX violations. And if I could, Your Honor, 20 the instructions that were given in this case were asked for by Mr. Wadler. He asked for these instructions. And every instruction focused on rule or regulation of the SEC. He never asked for, and he never got anything under the third clause that Judge Graber alluded to about other provisions relating to shareholder funds. But he did ask for, with regard to the Tammany count, an instruction that talked about the FCPA violation, and the judge chose to give this one, correct? Yes. It's the Casey instruction, Your Honor. But the crucial point in 27, and I ask you to read it with care, it refers back to Instructions 19 and 20. If I could commend to Your Honors, you must read the following instructions together. Instruction number 18, it says, you must show that you engaged in activity protected by SOX. Okay. Now we go to Instruction 19. So Instruction 18 is at Excerpts of Record 79. Now you must go to Instruction 19. It's not in the ER, but it's docket 217 at page 20. And that says, Wadler engages in protected activity under SOX if he discloses, and I quote, violation of any rule or regulation of the SEC. He invokes Clause 2 of the SOX provision, Judge Graber, not Clause 3. Then what happens in Rule 21 is the ---- It also says in Jury Instruction 19 that the conduct is protected under the Sarbanes-Oxley Act, even if the employee was, again, paraphrasing, wrong. Absolutely. Don't dispute that, Your Honor. That it was, in fact, a violation of the rules of the SEC. So if he ---- Don't dispute that, Your Honor. If he mistakenly believed that it was an SEC problem, then he still has proved his case. That's not correct, Your Honor. It is a legal question for the Court and not something for Mr. Wadler's mistaken belief, whether or not there was proved in this case, on the instructions as given to the jury, a violation of SOX. It cannot suffice that there was a violation of the FCPA. It has to be that he was retaliated against for reporting a violation of rules and regulations of the SEC. Well, it's not what Jury Instruction 19 says. The last sentence of it says that his conduct is protected even if he is wrong, that it's an SEC violation. Your Honor, it's ---- that cannot be right. That's what it says. You're the one who's saying you must live by these instructions, that employee's conduct is protected under the Sarbanes-Oxley Act, even if the employee had a reasonable but mistaken belief that the conduct violated a rule or regulation of the Securities and Exchange Commission. There can't be any reasonable but mistaken belief that there was a violation of the SEC regs in this case because there is no violation of an SEC ---- there is no violation of an SEC rule. If the SEC doesn't have any rules of regulation, if we go back to page 30 and we look at Instruction 21, let's just be clear. I know, Judge Graber, you were willing to assume this, but if we go back to page 30 of the blue brief, of the four things in the list, it's undisputed that 1, 2, and 4 do not correspond to any SEC rule and reg. Undisputed. No, there can't be a legal finding under an incorrect instruction that he mistakenly but reasonably believed there was a violation of something that isn't a SOX violation. But, counsel, it is true that Instruction 27 refers specifically to 19 and 20, but you can't read 19 and 20 without then going to 21 with the list of those four things. Correct. And what I'm having trouble with, counsel, is that in 27, I think this is just a device to take the jury back to the four things that are listed in 21. And if that's the case, I don't see how any reasonable jury, how this could be reversed on the theory you're offering given the jury verdict in this case. The jury had to find that there was a violation of the FCPA or had to find that this was what was reported by Mr. Wadler and that that's why he was discharged. So how does that not violate Tammany? It doesn't violate Tammany, Your Honor, as charged in this case. And by charged, Your Honor, I mean instructed. I understand what you mean. The law of this case precludes that result here. There might be another Tammany case. Frankly, it's mysterious to me why Mr. Wadler didn't pursue Tammany as a separate theory, but he didn't. And the crucial thing, and I want to refer, Your Honors, precisely to Wadler's own waiver, Wadler waived a Tammany theory independent of SOX. He absolutely waived it. He says at FER 13 in the jury instructions argument, there is complete overlap between the type of protected activity involved in the Tammany claims and the claim under SOX. And the Court took him at his word, and he instructed in No. 27 that to find a Tammany, you've got to find a SOX. And to find a SOX, you've got to find a rule or regulation of the SEC. And this case doesn't have a violation of a rule or regulation of the SEC. Well, it has one. One, Your Honor. You said that it did. You're absolutely right, Your Honor. And I'll get to my last point on that. And I'd like to reserve some time for rebuttal, if I may. On the last point, Your Honor, we concede that Instruction 21 is correct in paragraph 3, that there is an SEC rule and reg about knowingly falsifying books and records. But the record in this case doesn't remotely support that the judgment under that instruction. And so, respectfully, we think the only question here is, do you give us a reversal for legal error in Instruction 21 or a new trial? We think we should get reversal because, under settled canonical law like Boyle, if there is no ground on which a reasonable jury that was properly instructed could have found the verdict, then we should get reversal, not just new trial. And there's no ground here because if you look at the report that Mr. Wadler gave to the Audit Committee reprinted at Excerpts of Record 437 to 38, you will see not one word, not one iota about falsifying books and records, not one word. It's about an inability to provide third-party documents and supposed bribery. So with respect, Your Honor, we think 1, 2, and 4 of 21 are legally erroneous, require at least a new trial, if not reversal. We think we would get a reversal because 3 isn't supported by the record. Socks' rule and regulation of the SEC is the card that, if you pull it out, the entire house of cards comes down because the Tammany claim was predicated solely on Socks. It could have been an interesting question for another case, Judge Bennett, if there could be a Tammany case independently. But you would be the first court to announce FCPA can be predicated on a rule of regulation of the SEC or to define the FCP as a provision regarding shareholder fraud. You shouldn't do it on this record because this was the weakest possible record, even if we reach the question of his FCPA claims. I respectfully request the rest of my time for rebuttal. Thank you. You may do that. Good morning, Your Honors. Michael von Lohenfeldt for Sanford Wadler. Let me start with Judge Bennett's question. The Tammany claim is clearly independent. The instruction does refer back to during Instruction 21 as a list of things. And counsel is right. I did say that the type of activity protected under Socks is the same type of activity we're talking about in Tammany. But I said that in the context of a list of four things. What we were telling the judges very clearly, and everybody understood this, the whole case, he was fired for this report, which violates the following laws, and that substantially violates both Socks and Dodd-Frank, which I agree is now gone, and Tammany. This notion that somehow there's a legal gotcha, that if one of the Socks elements falls out, the Tammany claim isn't there anymore, makes no sense, not only because of their proposed jury instruction, which Your Honor noted, but we pled it that way, too. It's been clear the whole case that the violations of the FCPA satisfy the Tammany claim. And the only reason the jury wasn't instructed specifically that way is they were already told those elements in Instruction 21, and Judge Spiro was trying to make the jury instructions nonrepetitive. And so in both Dodd-Frank, which now maybe doesn't matter, but as an illustration, and in Tammany, the instructions look back to the list of protected activity discussed under the Socks claim. It's not — it's a totally separate claim that supports the verdict. Well, the complaint certainly encompasses all sorts of things under the Tammany claim. It's reporting bribery books and records violations of the FCPA, Sarbanes-Oxley, and related misconduct and refusing to participate in the company's attempts to turn a blind eye and cover up its misconduct. So the complaint certainly is broad enough to cover a lot. But I guess my question to you is really quite similar to where I started with opposing counsel, and that is, assuming that there is an error in Instruction 21 because many of those things are not SEC-related, what difference would that make to the jury's verdict had it simply said under relevant provisions or simply left off that entire introduction and said the following four items are illegal, how would the jury's verdict have been any different? It would not, Your Honor. It would be no different whatsoever. First, the notion that whether it's a rule or regulation of the SEC or a law relating to fraud is a, quote, new theory. That's a false notion. The theory is that his conduct was protected by 1514a, which includes both those terms. But, counsel, it is true you never argued below that this was fraud against the shareholders' provision of Sarbanes-Oxley, correct? We didn't. Again, that's pled. But we didn't specifically argue it in the jury instruction conference when this came up for the first time. Okay. But, Your Honor, I would note, first off, it's not fraud against shareholders. It's a law relating to fraud against shareholders. And as Your Honors know, relating to is a very broad term. These rules have everything to do with the SEC. The FCPA is part of the Securities Exchange Act. And we cited numerous cases in our brief, the Feldman case, the Smith case, the Worldwide Coin case, which treat 78M, which is the Books and Records and Internal Accounting Controls provision of the FCPA, the statute, as a rule of the SEC protected by SOX. So I would submit, Your Honor, there was no error. The word rule of in the statute is broad enough to encompass the underlying statute. Counsel, assume that we're not going to agree with you on that. In your questioning of Mr. Wadler, you specifically, and I think this is at SCR-182 or ER-201, you specifically asked him, do you reasonably believe that that would constitute a violation of the rules and regulations of the Securities and Exchange Commission? And Mr. Wadler said yes. Was there any testimony where you asked him, would this constitute a violation of a law relating to fraud against shareholders? I don't think we specifically asked him the question in that phraseology, Your Honor. But I think it's the same thing. And I think fundamentally, the question is not whether we asked Mr. Wadler to say magic words at trial or whether Mr. Wadler's report says magic words. The question is whether the report he made is the type of report that's intended to be protected by SOX. And it clearly is. This is exactly what SOX protects, reports of violations of the nation's security laws, which both relate to the books and records requirements of the SEC, which is both a, quote, unquote, rule of the SEC and a rule in the plain English sense of the meaning that a statute created by Congress sets a rule, and which the SEC enforces, which is why it's a rule of them. And it relates to the law. And you probably asked him that question because of the way Jury Instruction 19 is written about his reasonable belief as to whether, even if he's wrong, did he actually believe that. No, that's right, Your Honor. And again, fundamentally, what we're talking about is whether Bio-Rad should be allowed to fire the general counsel in malicious retaliation for making this report to the audit committee, because the CEO got mad that Mr. Wadler went over his head and asked them to look into something he didn't want looked into. That's what this case is about. This is a textbook case of retaliation. Well, but you won that in front of the jury. But what this appeal is about, in large part, is whether the jury was properly instructed. And if we find the jury wasn't, whether we have to reverse or not. But in looking at that, what you're looking at is whether the jury was told that these acts were protected. That's the fundamental question. It doesn't matter whether the introductory sentence said they're protected under Clause 1 or Clause 2 or Clause 3. That's a legal question. And I would direct the Court, even if you suggest we raise this for the first time on appeal, I would direct you to Mashahiri v. Epstein-Grinnell, 845F3rd at page 989, where the Court recognizes that an appellee can raise a pure issue of law, which this clearly is, on appeal. And it wasn't even us that raised it, Your Honor. Pages 29 and 31 of the opening brief make the opposite argument. They said in their opening brief this was not a law related to fraud against shareholders. They're not saying that because the issue is coming out of the blue. They're trying to preempt the argument. And we responded to it. That's perfectly fair. They've had a full opportunity to brief it. And there's no question. Because it is their obligation to demonstrate that there's prejudice from any erroneous jury instruction. Otherwise, they're not entitled to reversal because of an erroneous instruction. Exactly. And I guess I'm stuck. Did there have to be any kind of introductory phrase in the instruction at all? No. Or to be a correct statement of law, I could just say the following four things are unlawful? One, two, three, four. I mean, frankly, the jury could have just been told, did Mr. Wadler asked, rather, did Mr. Wadler complain about the following things. The jury didn't need to know why they were protected, because it doesn't factor into their fact-finding. That's extra language that was included. But it — Well, it is pretty clear from Jury Instruction 18 that the protected activity is the report to the Audit Committee. That is his claim. That's correct, Your Honor. And there's no question about that. And there's no question that that's what they retaliate against for. And even if you were to find that somehow it's legal to fire people for reporting potential bribery, you still have to deal with the fact that the bribery in this case directly tied to the books and records violations. Mr. Wadler's report discusses them in context because bribery causes the books and records to be false. And that's true as well with the shipping records, where they say they're shipping one thing and they ship free products in addition to it. It makes the shipping — the sales records false. So it's all tied in together. They're not — this is not a case where Mr. Wadler did one thing on one day and another thing on another day, and we're arguing about why was he retaliating against. It's all wrapped up in the same concept, which they admitted below. And I must say, their argument that they can withdraw their jury instruction and tell the judge that it's undisputed and then later use the word original without actually calling out that they're trying to recall their waived or withdrawn jury instruction to present that issue to the court is very dangerous. Can't counsel, if we — if we agree with the appellant that this is not a rule or regulation of the SEC, then in order to affirm the Sarbanes-Oxley count, we essentially have to rewrite the jury instruction to say that your client subjectively, personally, and in good faith believed that the conduct he was disclosing constituted a violation of a law relating to fraud against shareholders. I don't know that I'd characterize that as rewriting the jury instruction, Your Honor, because what — the function of the jury instruction is to ask the jury to make factual findings or not make factual findings. And the nugget of factual finding in the instruction stays the same. What you're doing is applying — and perhaps it's under a harmful error analysis rather than directly — you're saying the correct statement of the law would have had different words, but the exact same effect, because fundamentally the factual questions presented to the jury are the same. Right. That's — that's the question we have to ask when we're looking at reversibility of a jury instruction error, is whether it had intended, you know, whether it would have changed the outcome had the instruction been correct. That is — that is our job. But I — I wonder — well, never mind. So, Your Honor, I think if the instruction had said, Mr. Wadler — did Mr. Wadler complain about the following acts, that would have by itself been sufficient under the law, because, again, the question of whether those acts is protected is a question for the Court. I think getting too caught up into exactly how it was questions, not — not things that were within the province of the jury. And here there's no question as to — it admitted books and records violation. There clearly was falsification of records. That's what the jury found. I don't understand, frankly, as an appellate lawyer, how this appellant can be allowed to make any type of substantial evidence argument when their brief makes no attempt to present what actually happened at trial. Even as to the arguments they're making, they make no attempt to present all the facts around the — the falsities and deficiencies in the records, much less in the light most favorable to the verdict. Sotomayor, I was going to say, we know that that's our job, is to look at it in the light most favorable to the verdict. What difference does it make, if any, to our analysis that the memo that was sent to the Audit Committee refers — sort of introduces it as the SEC is investigating these things? Does that make any difference? Well, I think it — for one thing, it demonstrates the reasonable context, that they were already in the middle of an SEC investigation under the Foreign Corrupt Practices Act. But it also highlights the notion that Mr. Wadler was making a protected complaint under SOX, because he was raising issues within the purview of the SEC. He was going to the Audit Committee board and saying, there's a potential serious SEC problem here that we need to look into and correct if, in fact, it's — there's a problem. That's exactly what SOX is intended to do. Right. Because he's talking about, I think, an 8k filing that he wants to alter, or he would have wanted to alter, or something along those lines. I have another question, if you — if you don't mind, and that is, Judge Bennett asked a number of questions about the State law claim. And I want you to just assume this for the sake of the question. Assuming that we agreed with you that the verdict, other than the Dodd-Frank aspect of it, is supportable under the State law claim, why do we even have to reach any of these other issues under Sarbanes-Oxley? I don't know that you need to, Your Honor. There's been — they've not made any argument that the Tammany claim alone doesn't support the result, other than the doubling of the back pay. They've presented no argument, appeal, that anything else would need to be reversed. And I think the Tammany claim is clearly supported, not only supported by the record, but there was no objection below to the instructions, and there's no objection really on appeal. Do you agree with counsel's argument that under Dodd-Frank, they are entitled to a reduction in the amount of damages? Yes. I think that's inescapable. And I think what this Court should do is affirm with an amendment to the judgment to effectuate that. Well, you said they didn't object to the instruction. They objected to the Tammany instruction on the basis that it incorporated the rule of regulation of the SEC language, which had been in the other instruction. So they did preserve that objection, certainly. Well, they objected, except that they — their alternate instruction, as you point out, instruction 4A, expressly states that any violation of the FCPA would be sufficient. If we — That is — I do have that, yes. Right. No. As you do, it's interesting, Your Honor. I had pulled that out to mention because it wasn't in the excerpts of record, and I was pleased that you found it. That — that history clearly shows what happened here. What happened here is we had an argument below about bribery, not about the other parts of instruction 21, just about bribery. And they were proposing up through the jury instruction conference that on Tammany, the jury be told, protected by SOX or the FCPA, because the bribery thing wasn't covered under both under their theory. The judge found that it was covered under both, so there was no reason to say both things. He collapsed it. Judge Spiro collapsed it as a SOX instruction. But the four — the four elements in jury instruction 21 are all clearly protected under Tammany, whether or not they're also protected under 1514a of SOX, and whether or not they're also protected under 1514a of SOX, because they're violations of the FCPA. Did these instructions in written form go into the jury? Honestly, I don't remember. Because I see that instruction 21 says, in addition to Sarbanes-Oxley, the Foreign Corrupt Practices Act. The Foreign Corrupt Practices Act is specified as a part of the title of the jury instruction. Right. And I think, actually, the statutory citation is at the end of each of those lists, isn't it? No. Not in the copy that I have, at least, which is document 217, page 22. Okay. I know where these things are found in many places, but — So I don't — I don't remember, candidly. I think a written copy of the instructions went to the jury, but I don't remember. I'd be easy enough to search the transcript to see if it's reflected, but it might have happened and not been reflected. But more fundamentally, I think, it doesn't ultimately matter whether the jury understood that the actions violated the FCPA, because that's a legal question. What the jury was being asked is, is this why he was fired? And if why — if what he complained about was protected, then befiring him was illegal. The jury doesn't need to understand the nuance of which specific statutory subsection protected Mr. Wadler. They — it's a legal question as to whether it did — there was, in fact, a section that protected him. And here we — you know, as to Tamley, of course, it's the FCPA directly, so you don't need to get into the nuance. As to Sox, we do think — and I understand, it sounds like I'm not going to convince the panel, but I think if you do — if you want to go back and you think it's necessary, which, frankly, it's probably not, but if you read Feldman, Smith, Worldwide Coin, the DOL's case in In re Lesnick, they all more loosely discuss this rules and regulations concept as including the statute itself and the implementing rules. But under these jury instructions, all he needed was a reasonable belief. Correct, Your Honor. That's true as well. Well, you're not arguing that if these things aren't part of Sox, that his reasonable belief would protect him, and you didn't argue that below, did you? I'm not — I'm not arguing that if he thinks something is illegal that's not illegal, that protects him. No. I think the law is clear that, you know, if I think that the CEO is not allowed to wear the same color shirt every day and I make a complaint about it, that's not a protected claim because it's not objectively reasonable. The reasonable belief goes to the fact part. I think that's true, Your Honor, yes. But I do think here that the — he doesn't have to know which rule is implicated. He doesn't have to understand or much less say specifically, you know, what the theory  So if he thinks bribery is illegal under Statute A, when it's really illegal under Statute B, the good-faith belief protects him. That's your argument. That's exactly what I'm — yes, Your Honor, that's exactly what I'm saying, which is why it doesn't — which is why the argument that there's no word about accounting controls or something in his report or falsification is wrong, because when you look at the report, you have to look at the conduct he's alleging, the conduct he's reporting, and it clearly implicates all of those things. So, Your Honors, we — again, I think that you don't need to reach the question specifically, because I think that the — both because it is a law related to fraud, as the entire Security Exchange Act is, and as all the authority we provided to shows, and because the verdict is supportable under TAMNY. This is a textbook case of whistleblower retaliation. And there — if this conduct's not protected, I don't know what is. This is exactly what companies are not supposed to do. This is what happened in Enron, which is why SOX was created, to make sure that companies, when reports are brought to higher levels of the company, they don't close their eyes and their ears and fire the messenger. And that's what they did to Mr. Wadler. So, Your Honor, with the exception of the double back pay, which I do agree needs to be modified, we'd ask that you affirm. Thank you, counsel. Thank you. You have some rebuttal time remaining. Your Honor, I recognize that we're asking you to do something that's difficult, which is to overturn a jury verdict. And I think it's absolutely clear from the briefing that the Instruction 21 is legally erroneous with respect to paragraphs 1, 2, and 4 on the rule and regulation of the SEC theory, because 1, 2, and 4, bribery, maintenance of books and records, and circumvention of accounting controls are not rules and regulations of the SEC. The SEC expressly declined to enact a rule or regulation covering 2 and 4, and my adversary concedes that 1 is not in any rule or regulation of the SEC. So what's happened today is you're looking to see, can you save this verdict by going to either of two alternative theories other than the one in Instruction 21, the one that was litigated below, the one that my adversaries insisted on throughout the jury instructions, and that's the rule and regulation theory, and you've put up two possible alternative theories, and they cannot save the verdict. The first alternative theory is you say, well, what if the jury — why can't we just say the jury might have reached the same verdict under the unstated third prong of SOX, that the FCPA is somehow another provision of law relating to shareholder fraud? And the answer is it cannot, Your Honor, and that's a harmless error for you to save a verdict. Sotomayor, but that's not — there's not a waiver theory. We have a standard of review, and the standard of review requires us to determine whether, if a jury had been correctly instructed, it would have reached the same result or not. So whether the other party has explained exactly what a correct jury instruction would look like doesn't seem relevant to me. It's our standard of review. We can't just say, here's a — here is a — let's say they made no answering brief, and you just had your brief, and we said, oh, gee, it's a bad instruction. We would still have to say, well, what difference does it make? Your Honor, it would not have been a correct instruction had the — as Judge Bennett said correctly, you would have to rewrite Instruction 21 to take out the words rule and regulation of the SEC and put in the words other provision of law relating to fraud and shareholder fraud. Isn't that our job? We have to — No. Well, when you say, here's an erroneous instruction, we have to determine, we're required to determine whether it made a difference or whether the verdict would have been the same under a correct instruction, regardless of any argument made by the other side. That's our job. It would not, Your Honor. And the reason is that an FCPA violation is not a violation of a statute relating to shareholder fraud. That's a different argument. It's not because they didn't say that. You're saying that a correct instruction would have been entirely different. It wouldn't have just left out that introductory phrase. Correct, Your Honor. And let me try to be clear here. Remember, relating to fraud on shareholders. Fraud on shareholders means publicly disclosed statements. Obviously, SOX doesn't try to incorporate every violation of Federal law. It would bring commerce to a halt if you could, you know, have protected whistleblower retaliation claims for violations of the drug laws, RICO, FCA. There are specific provisions for those. So you can't just say, well, FCPA is a bad — violations are a bad thing, so they're incorporated into SOX. It would have to have been something relating to fraud on shareholders. FCPA is not standing alone about shareholder fraud. Does it make any difference that it's the SEC that investigates the Foreign Corrupt Practices Act? It does not, Your Honor. I'm going to — I want to make one point about Tammany. May I go over my time, if I answer your question? Very briefly. It does not because the statute is clear that it has to be a rule or regulation of the SEC, or it has to be a violation of a provision of law relating to shareholder fraud. There was no shareholder fraud alleged in this case. You will look at 437.38, and you will find nothing about deceiving shareholders. It's about internal failure to keep records and supposed bribery. So with respect, we don't think you should be the first court in the country to hold against Department of Labor guidance in GUPTA that you can save this verdict by the — Did you want to make a comment about Tammany? Tammany, Your Honor. You can't save it with Tammany either because the Tammany claim was absolutely predicated on Sox. And you need look no further than ER-74 to the verdict form. Question one. It was a — question one asked the jury, did Wadler engage in conduct protected by Sox? If the answer is no, you're done. So there was no possible Tammany theory independent of the Sox claim. So if we're right that the Sox instruction was wrong, the Tammany clause goes — the Tammany claim goes with it. There might be another case where Tammany is pleaded independently, but you can't save this verdict based on that theory. Thank you, counsel. We respectfully request reversal or remand for new trial. Thank you. The case just argued is submitted, and we appreciate the arguments of both counsel in this very interesting case. We stand adjourned for this morning's session.
judges: Graber, Kobayashi, Bennett